## 39371. HIGH v. ZANT.

WELTNER, Justice.

We granted a certificate of probable cause to consider High's contentions on writ of habeas corpus. For the factual background of the case see *High v. State,* 247 Ga. 289 (276 SE2d 5) (1981), where this Court affirmed the imposition of the death penalty; *Brown v. State,* 247 Ga. 298 (275 SE2d 52) (1981); and *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979), where we affirmed death sentences imposed upon

High's co-actors.

1. High's principal contention, along with 24 other enumerations of error, is that he was denied effective assistance of counsel in that no witnesses were called on his behalf during the sentencing phase, notwithstanding his post-trial showing of the availability of witnesses who, *after the trial,* indicated their willingness to come forward in his aid.

His counsel, a member of the Bar for many years and a lawyer possessing wide experience in the defense of criminal cases, including capital cases, testified before the habeas corpus court that he and two assistants made an effort to locate witnesses, and inquired of High as to the availability of witnesses — without avail, either from their own investigation or from suggestions put forward by High. He further stated that he had determined not to call High's parents for fear that their distress might be perceived by the jury to be feigned.

In support of his contention, High presented to the habeas corpus court a series of affidavits from family, friends, neighbors, and former teachers, several of which are excerpted as follows:

"A gentle person . . . he never showed any cruelty to others." "Jose could be very considerate and quite generous. He gave me flowers once stating that he appreciated me because I took time out for him and would talk to him about his feelings and problems. I remember him giving me candy too . . ." "Jose was desperate for attention and definitely begging for psychological counseling but we didn't even have a school psychologist."

Other affidavits showed that High was "a nice fellow and good neighbor," that he once helped a neighbor start a car, and that he cut the grass and took care of the dogs at his parents' home; that he was "polite," and a "normal regular teenager."

Having presented these affidavits, High contends that his counsel, in failing to produce at the trial equivalent testimony, was of necessity ineffective, notwithstanding counsel's relation of the matter.

Lest the total circumstance within the courtroom be overlooked at this remove, we quote from *High,* supra, at p. 297: "The appellant showed no remorse for the killing, but rather bragged that 'he wanted to be the most famous black ringleader in the world.' Under the evidence of this case, there is no doubt that the kidnapping and murder were of the type universally condemned by civilized societies as outrageously or wantonly vile or inhuman."

In our opinion affirming the conviction and death sentence of High's co-defendant, *Ruffin v. State,* supra, there appears at page 95 the following summation of fact: "In the late evening hours of July 26, 1976, Henry Lee Phillips was operating an Amoco service station off

I-20 near Crawfordville, Georgia, with his eleven-year-old stepson, Bonnie Bulloch, helping him. A car pulled into the station with three occupants. The appellant and the two co-indictees, Nathan Brown and Jose High, were in the car. The car had been in the station a week or two earlier. The three men got out of the car and one pointed a pistol at Phillips. Appellant had a sawed-off shotgun. Phillips was forced to leave the booth while the appellant removed the money from the register and demanded any other money. When Phillips told him that there was no more money, the appellant grabbed Bonnie Bulloch and told Phillips to get in the car trunk or Phillips and the boy would be killed.

"Phillips got in the trunk of the car and when he was released from the trunk found that they were in the woods. Phillips and his stepson were ordered to lie on the ground. Phillips then heard shots fired. When Phillips regained consciousness he discovered that Bulloch was dead. In his confession, the appellant stated that he shot the boy in the head while his cohorts also shot at the victims. Phillips had been shot in the temple and wrist. He managed to get to a nearby house and the sheriff was summoned."

In viewing the contention of ineffectiveness of counsel, we cannot consider potential mitigation evidence *in vacuo,* any more than the trial jury might blot out what they have seen and heard for several days in the guilt phase, once they turn to consider sentence. Here, the jury learned of the execution-style killing of an eleven-year-old child, whose only offense against High was that he was present when High and his companions robbed a service station, thereby committing the crime of becoming an involuntary witness. Here, the jury was exposed to the tragic death of a little boy, shot through the head after High had continued to ask and assure him " 'Are you ready to die? Do you want to die? Well, you're going to die.' " *High,* supra, at p. 296. Here, the jury learned of a small child removed from a car, marched around the front of an automobile and forced to lie upon his face, as three murderers snuffed out his life. Here, the jury heard of High bragging that "he wanted to be the most famous black ringleader in the world."

Up against that, High's counsel is charged with derogation of duty in failing to call someone who would mount the stand to say that Jose was a normal teenager, or that he never talked to a school psychologist.

In the face of the monstrosity of what High did to eleven-year-old Bonnie Bulloch, we can easily understand the decision of an *experienced* defense lawyer who sees, with us, the hazard of deigning to present such transparencies.

The habeas corpus court found as a matter of fact that High's

counsel rendered effective assistance, as do we.

2. High contends that the habeas corpus court erred in not admitting into evidence two affidavits in support of his claim of ineffective assistance. This contention is without merit, as the affidavits were not served upon the State five days in advance of the day set for hearing, as required by OCGA § 9-14-48 (c) (Code Ann. § 50-127). Nevertheless, we have considered the affidavits and conclude that, even if they were properly in evidence, our holding in Division 1 would not be affected, as they are merely cumulative of other evidence which was considered by the habeas corpus court.

3. It was not error to exclude from the guilt-innocence phase of High's trial jurors who stated that they were conscientiously opposed to the imposition of the death penalty. Smith v. Balkcom, 660 F2d 573, 578 (5th Cir. 1981).

In particular, it was not error, under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968), to exclude a juror who stated that, while she could consider capital punishment along with other possible punishments, she could never impose it, under any circumstances. See *High,* supra, at p. 291.

4. High contends that the trial court erred in failing to excuse for cause six jurors alleged to have preconceived notions of petitioner's guilt or the penalty to be imposed.

High argues that two of the jurors should have been excused due to their failure to understand the presumption of innocence in favor of the defendant. Neither juror actually served on the jury which convicted High. The basis for High's contention may be illustrated by excerpting a portion of the voir dire examination of juror Warren Johnson by defense counsel:

"Q. You would require the defendant to put up some evidence to prove he's innocent?

"A. I'd want to hear both sides.

"Q. And you'd have to hear both sides before you could return a verdict of not guilty?

"A. Yes."

Mr. Johnson subsequently stated that his mind was perfectly impartial between the State and the accused, that he would want to hear "all the evidence," and that he could return a verdict of guilty or not guilty whether the defendant put up any evidence or not.

"In examining a prospective juror, counsel for the accused should not ask technical legal questions in regard to the presumption of innocence, but should confine his questions to those which may illustrate any prejudice of the juror against the accused, or any interest of the juror in the cause." *McNeal v. State,* 228 Ga. 633 (3) (187 SE2d 271) (1972). The questions proffered were improper, and

the responses thereto were not grounds for excusing the jurors. Additionally, the layman generally conceives of a court as a tribunal where "both sides" will be heard.

High contends that four jurors should have been excused for cause due to fixed opinions as to guilt-innocence or punishment. A review of the voir dire examination of these jurors reveals that all four had heard about the case at the time of the killing. One indicated that he had an opinion as to the guilt or innocence of High, but that he could subordinate that opinion to the evidence and the law as given by the court. The others, one of whom served on the convicting jury, indicated that they had opinions as to punishment, but that, again, their opinions could be subordinated to the evidence and the law as charged by the court. As none of the jurors had fixed opinions as to guilt-innocence or punishment, this contention must fail.

High's contentions relative to sequestration of the jury and the oral denial of a Brady motion in the presence of the jury have been considered and rejected on direct appeal. *High,* supra, pp. 291-2.

5. We held previously that the application of the peremptory strike statute, former Code Ann. § 59-905, in this case did not result in a denial of due process to High. *High,* supra, at p. 289.

6. It was not error to deny State-paid expert assistance to High at trial. *High,* supra, at p. 289.

7. High contends that the trial court erred in denying his motion for a change of venue. In support thereof, High introduced thirteen newspaper articles, all published on or about the time of the killing, some two years prior to trial. We have reviewed carefully the voir dire examination of each juror who sat on the convicting panel, and conclude that, although all but one had at least heard about the case at the time of the killing, none had fixed opinions as to the guilt or innocence of High or as to punishment. In view of the remoteness of the publicity surrounding the case and the successful empanelment of an unbiased jury, we conclude that the trial court did not abuse its discretion in denying the motion for a change of venue. *Coleman v. State,* 237 Ga. 84 (1) (226 SE2d 911) (1976).

8. High contends that he was denied his right to a speedy trial, under the sixth amendment to the U. S. Constitution. Applying the four-factor test adopted in *Haisman v. State,* 242 Ga. 896 (2) (252 SE2d 397) (1979), we conclude that no constitutional violation occurred.

High's trial began in November, 1978, more than two years after his arrest in August, 1976. This delay was attributable to High twice having challenged successfully the composition of the grand juries which indicted him. High does not allege that any demand for trial was made prior to his motion to dismiss, made on the first day of trial.

See OCGA § 17-7-171 (Code Ann. §§ 27-1901.1, 27-1901.2). Finally, High does not allege any particular prejudice resulting from the delay. Based upon these factors, we conclude that the delay between arrest and trial did not amount to an error of constitutional proportions.

9. High contends that the trial court erred in allowing the introduction of evidence seized as a result of an allegedly illegal stop and arrest. This contention has been considered and rejected by our courts. *High,* supra, at p. 295, citing *State v. High,* 145 Ga. App. 772 (244 SE2d 888) (1978).

High contends that the admission of incriminating statements made to police while in custody violated the procedural requirements of Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). The trial court held a Jackson-Denno hearing, heard evidence concerning the circumstances surrounding the giving of the statements, and specifically ruled that they were freely and voluntarily made. The statements were then submitted to the jury with full instructions as to their admissibility. The ruling of the trial court as to voluntariness is supported by the evidence. The procedure followed was not subject to the defects disapproved in Jackson v. Denno, supra, at pp. 377-91.

10. High contends that certain evidentiary rulings denied him a fair trial. High fails to point out where these rulings occurred. Nevertheless, we note that we already have considered allegations relative to the disclosure of evidence unfavorable to High, the enforcement of a sequestration order, the admission of evidence concerning High's co-defendants and the admission of certain tire track evidence. See *High,* supra, at Divisions 5, 8 and 9. We have considered other evidentiary rulings complained of, including the alleged failure of the trial court to instruct the jury to disregard certain testimony, and find no error.

11. High contends that he was denied a fair trial due to the failure of the court reporter to transcribe bench conferences. The trial court granted a motion for complete recordation "insofar as the law requires." Where the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f) (Code Ann. § 6-805). When this is not done, there is nothing for the appellate court to review. *Zachary v. State,* 245 Ga. 2, 4 (262 SE2d 779) (1980).

12. It was not error to deny State-paid assistance to High at the habeas corpus hearing. *Harris v. Hopper,* 243 Ga. 244 (253 SE2d 707) (1979).

13. High contends that the trial court's instructions to the jury

as to intent were burden-shifting, in violation of Sandstrom v. Montana, 442 U.S. 510 (99 SC 2450, 61 LE2d 39) (1979).[1]

In defining a "crime," the trial court charged the jury as follows: "A *crime* is a violation of a statute of this State in which there shall be a union of joint operation of act and intention. I charge you that the acts of a person of sound mind and discretion are presumed to be the product of a person's will, but the presumption may be rebutted. I charge you that a person of sound mind and discretion is presumed to intend the natural and probable consequences of his act, but the presumption may be rebutted. I charge you that a person will not be presumed to act with criminal intention, but the trior of the facts may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted." Subsequently, after defining the crime of murder, the court gave the following instruction: "I charge you, ladies and gentlemen of the jury, that the law presumes that a person intends to accomplish the natural and probable consequences of his act or acts if that person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily employed to produce death and thereby cause the death of a human being. The law presumes the intent to kill. This presumption may be rebutted. I further charge you that a person shall not be presumed to act with criminal intention but the trior of the facts may find such intention upon consideration of the words, conduct, demeanor, and all other circumstances connected with the act for which the accused has been prosecuted. The burden is upon the State to prove the act alleged to be criminal is, in fact, a criminal act beyond a reasonable doubt."

High enumerates as error only the latter portion of the charge. We will review both.

In the first excerpted portion, the court essentially charged a rebuttal presumption that a person of sound mind and discretion intends the natural and probable consequences of his act. In the second portion, the court charged that where a person uses a deadly weapon in the ordinary manner and death results, the law presumes the intent to kill, but this presumption may be rebutted.

Taken alone, this language, while not creating conclusive presumptions, might be considered burden-shifting, in violation of Sandstrom, supra. However, this language must be considered together with the court's instruction, twice repeated, that a person "shall not be presumed to act with criminal intention but the triors of

---

[1] The trial of this case preceded the ruling in Sandstrom.

the facts may find such intention upon consideration of the words, conduct, demeanor, and all other circumstances connected with the act for which the accused has been prosecuted." And the court stated that "[t]he burden is upon the State to prove the act alleged to be criminal is, in fact, a criminal act beyond a reasonable doubt." The court charged that intent is an element of the crime and that the burden is on the State to prove every element beyond a reasonable doubt. Finally, the court instructed the jury as to the presumption of innocence no less than five times, including the following: "I charge you that the defendant enters into the trial of this case with the presumption of innocence. The presumption of innocence is affirmative proof in behalf of one accused of a crime and places upon the prosecution the burden of rebutting it by proof which shall satisfy the jury of the defendant's guilt beyond a reasonable doubt. The presumption of innocence refers to a substantive right which is in the nature of evidence."

Taking the charge as a whole, we conclude that no reasonable juror could have understood it to mean that any burden whatsoever was placed upon the defendant with respect to the elements of the crimes charged. The language employed merely created a permissive inference with respect to intent, and we find no reversible error. *Johnson v. State,* 249 Ga. 621 (1) (292 SE2d 696) (1982); *Hosch v. State,* 246 Ga. 417 (3) (271 SE2d 817) (1980).

14. High complains of remarks made by the prosecutor during his summation to the jury in the guilt-innocence phase of the trial. They include references to the defendant as subhuman and the invoking of religious beliefs and familial sympathies. The habeas corpus court correctly concluded that these remarks constitute ". . . conduct which is merely improper and universally condemned but not a denial of due process." Easter v. Estelle, 609 F2d 756, 760 (5th Cir. 1980). To constitute reversible error in a habeas corpus proceeding, the alleged misconduct must be ". . . so prejudicial as to render a trial fundamentally unfair in violation of the due process clause." Id.

A more serious problem is presented by the prosecutor's reference to portions of High's incriminating statements which were not admitted into evidence and which implicated High in other crimes. See OCGA § 24-2-2 (Code Ann. § 38-202). This amounted to an impermissible introduction of facts not in evidence, as distinguished from false logic or rhetoric. See *Powell v. State,* 179 Ga. 401 (4) (176 SE 29) (1934); Houston v. Estelle, 569 F2d 372, 376-84 (5th Cir. 1978). However, defense counsel made no objection to these remarks, although he did object to other portions of the closing argument, and thus the trial court had no opportunity to give curative

instructions to the jury. See *Whisman v. State,* 221 Ga. 460 (7) (145 SE2d 499) (1965). In view of the overwhelming evidence against High, including his own incriminating statements and the eyewitness testimony of a victim who survived an attempt on his life, we conclude that it is highly probable that the error did not contribute to the verdict. *Johnson v. State,* 238 Ga. 59, 60-61 (230 SE2d 869) (1976).

High contends that the following remarks, made by the prosecutor in his summation to the jury in the sentencing phase of the trial, constitute improper comment upon the defendant's failure to testify: "You know, if a week or two weeks or three weeks after this cruel and inhumane and defenseless little — this murder on a defenseless little 56 inch, 70 lb. kid — if two or three weeks later they had come in and said, listen, I did it, I'm wrong — maybe God can forgive me and you try. That's one thing. But no — until this very day there has been no remorse shown. There hasn't been one single word that I've heard that has been uttered that this is something that shouldn't have happened." This is not a comment which asked the jury to infer guilt from the defendant's failure to testify (see *Jacobs v. State,* 137 Ga. App. 592 (2) (224 SE2d 462) (1976)); rather, it asked the jury to infer a lack of remorse. We find no error. *Marshall v. State,* 239 Ga. 101 (3) (236 SE2d 58) (1977).

Lastly, High complains of allegedly inflammatory remarks by the prosecutor in the sentencing summation. For example, "... I want you to think about a little eleven year old boy — a little young fellow who didn't have a chance to live out his life because of the vicious, mean, lowdown, unlawful, illegal, immoral, conduct on the part of this man and two others." Assuming High to be guilty, which the jury had already found, we find this to be an accurate, if ineloquent, assessment of High's deeds. We have reviewed the entire summation and find no error of constitutional dimensions, nor any violation of state law. Compare Hance v. Zant, —— F2d —— (11th Cir. 1983). See *High,* supra, at p. 295.

15. The imposition of the death penalty is not cruel and unusual punishment *per se* simply because High was a minor at the time of the offense. Eddings v. Oklahoma, 455 U. S. 104 (102 SC 869, 71 LE2d 1) (1982).

16. High contends that the imposition of the death penalty was not justified under OCGA § 17-10-30 (b) (7) (Code Ann. § 27-2534.1) because of a lack of serious physical abuse prior to death. This contention is without merit. *High,* supra, at pp. 296-7.

17. High contends that the sentence of death must be set aside due to the failure to instruct the jury sufficiently as to the meaning of OCGA § 17-10-30 (b) (7) (Code Ann. § 27-2534.1) This contention is

without merit. *Gilreath v. State,* 247 Ga. 814 (16) (279 SE2d 650) (1981).

High contends that the trial court's instructions to the jury relative to their consideration of mitigating circumstances in fixing punishment were insufficient, citing Spivey v. Zant, 661 F2d 464 (former 5th Cir. 1981). With regard to the jury's decision whether to impose a life sentence or the death penalty, the court gave these instructions: "In reaching this determination, you are authorized to consider all of the evidence received by you in open court in the trial of the case. You are authorized to consider all of the facts and circumstances of the case including mitigating facts and circumstances, if any, on behalf of the defendant. . . . I charge you, members of the jury, that if you find that the State has proved one or more statutory aggravating circumstances beyond a reasonable doubt that you may recommend that the defendant receive a life sentence."

The sentencing instructions in this case were not subject to the defects disapproved in Spivey, supra. In Spivey, the jurors were told that they could consider all the facts and circumstances of the case in fixing punishment. Here they were told that they could consider all the facts and circumstances, ". . . including mitigating facts and circumstances, if any, on behalf of the defendant." In Spivey, the jurors were not instructed clearly as to the option to recommend a life sentence even though they might find aggravating circumstances. Here, that option was set forth in unmistakable terms. See *Hawes v. State,* 240 Ga. 327 (9) (240 SE2d 833) (1978); *Fleming v. State,* 240 Ga. 142 (7) (240 SE2d 37) (1978).

High contends that the jurors should have been instructed to consider mitigating factors in mandatory terms, i.e., instead of "You are authorized to consider, . . ." the court should have said, "You must consider. . . ." While mandatory language might be preferable, we do not believe a reasonable juror could have been misled by this variation. If the language had been construed as purely discretionary, the jurors might have concluded that they could impose the ultimate penalty without considering any of the facts and circumstances. Such a construction is plainly contrary to the reasonable intendment of the charge as a whole, including the requirement that, prior to imposition of the death penalty, the jurors must find the existence of an aggravating circumstance beyond a reasonable doubt.

High also argues that "mitigating circumstances" should have been defined for the jury. Implicit in the charge is a definition of the term, as the court referred to ". . . mitigating facts and circumstances, if any, *on behalf of the defendant.*" (Emphasis supplied.) Thus, even if a juror did not understand the term "mitigating," he or she could

have construed it only in its broadest possible sense, to mean *anything favorable to the defendant.* Any more technical definition might tend unduly to restrict the jury's consideration.

18. High was originally sentenced to death on four counts, Counts 1 and 4 consisting of the armed robbery and kidnapping of Henry Phillips, who survived, and Counts 3 and 5 consisting of the kidnapping and murder of Bonnie Bulloch. The jury found that the aggravating circumstance set out in OCGA § 17-10-30 (b) (7) (Code Ann. § 27-2534.1) was present as to each count. On direct appeal, we reversed the imposition of the death penalty as to Counts 1 and 4. *High,* supra, at p. 297. High contends that the jury's consideration of aggravating circumstances as to Counts 3 and 5 may have been infected by their consideration of Counts 1 and 4, and that therefore he should be resentenced as to Counts 3 and 5.

As we have stated previously, this contention relates to the reduction of sentences and not the disallowance of an aggravating circumstance. *High,* supra, at p. 297. The jury was instructed to ". . . state and set forth the aggravating circumstances which caused you or compelled you to inflict the death penalty as to whatever count or counts you might see fit to inflict such penalty." The court's charge required the jury to focus on each count before fixing the penalty for that count, and we conclude that the reversal of the death penalty as to Counts 1 and 4 does not require resentencing as to Counts 3 and 5.

19. High contends that the kidnapping with bodily injury of Bonnie Bulloch merged with the murder of Bonnie Bulloch, and thus High was improperly sentenced for crimes which merged. We have previously rejected this contention. *High,* supra, at pp. 294-5.

20. High's contention that the death penalty is imposed arbitrarily and in a discriminatory manner in Georgia also must fail. *High,* supra, at p. 295.

21. High contends that the sentence of death is disproportionate when compared to prior cases. This contention is also successive. *High,* supra, at pp. 297-8.

22. High argues that the death penalty is excessive as the evidence shows he was only an aider and abettor to the murder of the victim. The evidence, including High's own statements, clearly supports an inference to the contrary, and Enmund v. Florida, —— U. S. —— (102 SC 3368, 73 LE2d 1140) (1982) is distinguishable on its facts.

23. Electrocution is not cruel and unusual punishment as compared to other possible methods of carrying out the death penalty.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 1, 1983 —
REHEARING DENIED MARCH 23, 1983.

*Joseph M. Nursey, Bradley S. Stetler,* for appellant.
*Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.