Ronald WARD *v.* STATE of Arkansas

CR 86-59 733 S.W.2d 728

Supreme Court of Arkansas
Opinion delivered July 20, 1987

*Joseph B. Brown, Jr.*, and *Samuel Turner, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. An all white Crittenden County jury convicted Ronald Ward, a 15 year old black male, of murdering three white people and sentenced him to death. All of the peremptory challenges exercised by the prosecuting attorney, eight in this case, were used to strike black people from the jury. We find the state's use of the peremptory challenge violated the Equal Protection Clause of the United States Constitution and denied Ward a fair trial. Therefore, the judgment is reversed and the case remanded for a new trial. Numerous other errors are alleged, and we will address those questions which are likely to arise at the new trial.

Last year, in the case of *Batson* v. *Kentucky*, ___ U.S. ___, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the court overruled its decision in *Swain* v. *Alabama*, 380 U.S. 202 (1965), which allowed a defendant to challenge the exclusion of black people from juries. *Swain* was overruled because it "placed on defendants a crippling burden of proof." Since *Swain*, prosecutors have continued the practice of excluding black people from juries through the use of the peremptory challenge. A peremptory challenge can be made for no reason at all; a challenge for cause is usually for actual or implied bias. Ark. Stat. Ann. §§ 43-1919, 43-1920 (Repl. 1977). Challenges for cause by either party are unlimited. In a capital case the state has ten peremptory challenges, the defendant 12. Ark. Stat. Ann. §§ 43-1921, 43-1922 (Supp. 1985).

In *Batson*, the court held that a defendant who could make a *prima facie* case of purposeful discrimination shifts the burden to the state to prove the exclusion of jurors is not based on race. This *prima facie* case may be made by "showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Another way is to demonstrate 'total or seriously disproportionate exclusion of Negroes from jury venires.' Another example for making a *prima facie* case is by showing a "pattern" of strikes, or questions and statements by a

prosecuting attorney during *voir dire.*

■ When a defendant makes a *prima facie* case, the state must adequately explain the racial expulsion. "Mere general assertions that its official did not discriminate or that they properly performed their official duties" are inadequate explanations. This does not mean black people cannot be struck from a jury. It means that if a defendant makes a *prima facie* case of intentional discrimination, the state must offer some explanation other than race. The United States Supreme Court ruled the state must "articulate a neutral explanation related to the particular case to be tried." *Batson* v. *Kentucky, supra.* The trial judge must undertake a "sensitive inquiry" into the direct and circumstantial evidence available to decide if the state has made an adequate explanation. *Batson* v. *Kentucky, supra.*

■ In this case all of the state's peremptory challenges were used to exclude black people. After about four black persons had been struck by the state, the state complained that the defense had injected race into the proceedings forcing "the state to strike some black jurors or a black juror that they otherwise would not be predisposed to strike . . ." The defense ceased those questions, yet the state used its remaining challenges to strike black people.

The trial judge was convinced that the state did not intentionally use its peremptory challenges to keep black people from the jury. But the trial judge did not conduct a "sensitive inquiry" into the matter. He did not require the state to explain why it had excluded the blacks when a motion for a mistrial was made earlier. A motion for a mistrial was repeated after the jury was selected and denied. The trial judge said that the state could or could not, as it saw fit, offer an explanation later.

The state did later explain, for the record, why each black person was excused. Some of the reasons were pretty thin. For example, one lady was excluded because she was unmarried, unemployed and lived on a large farm. The state said she appeared hostile. Henry Williams was struck because he had two children the age of the defendant. The state said the main reason he was struck was because he was "noncommittal." The state said another juror was struck because an investigation uncovered the

fact that her car had been used in cocaine trafficking. This information was not brought out during her *voir dire* examination. So this was not before the trial judge at the time of his ruling. Another prospective black juror was excused because he referred to Ward as a "child," had read about the case, and heard rumors about it. We will not reiterate all the reasons given to exclude the eight black people, although one or two reasons given were acceptable. On the whole, the state clearly failed in its burden of proof. Actually, some explanations offered by the state were exactly the type of explanations the United States Supreme Court said were unsatisfactory.

Actions sometimes speak louder than words, and any prosecutor who uses all of his peremptory challenges to strike black people better have some good reasons available. We share Justice White's concern that the practice of peremptorily eliminating blacks from petit juries in cases with black defendants remains widespread. Discrimination within the judicial system is of the worst sort. The United States Supreme Court spoke strongly on the matter in *Batson* v. *Kentucky, supra*:

> The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. (Cites omitted.) Discrimination within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.'

The best answer the state can have to a charge of discrimination is to be able to point to a jury which has some black members.

The murder victims in this case are two elderly ladies and a young boy. It was especially gruesome. Audrey Townsend, age 72, and Lois Townsend Jarvis, age 76, were found dead in their home in West Memphis, Arkansas, on the morning of April 12, 1985. Chris Simmons, age 12, a great-great nephew of the two ladies, was spending the night with them, which he usually did about once a month. The victims were stabbed many times. There

was evidence that one of the women had been raped. A bloody butcher knife, evidently the murder weapon, was found in the kitchen sink. The house had been ransacked. A window had been broken to gain entry. The glass in a storm door was also broken as if entry was first sought through this door. A neighbor heard glass breaking sometime after 12:30 a.m. on April 12. The defendant was seen in the vicinity of the victims' residence about 12:30 a.m. The police began their investigation by talking to neighbors and everyone who was in the locality about the time of the crime.

Ronald Ward was first interrogated on April 16. He was not a suspect, and he was not warned of his rights. His grandmother, Lena Ward, came to police headquarters during his interrogation. Ward made a statement that he saw a fight between a man and a woman at the victims' house. He gave the police a description of the man. The police fingerprinted Ward at the conclusion of their questioning. Both Ward and his grandmother signed a consent to Ward's being fingerprinted. Ward's fingerprints were found on several objects in the house. In fact 21 separate prints of Ward's were found. Ward was arrested on April 18 and questioned again. He admitted he had broken into the house, but he insisted that he was forced to do so by two men. Ward said he left before any of the victims were killed.

Ward testified at trial. This time he said two men, named Tony Boyd and Willie Reed, forced him to enter the house. He admitted he had lied several times in his statements to the police. He said the main person threatening him was Willie Reed. He said he was raped by one of these men and Willie held a gun on him while he had sexual intercourse with one of the women. Ward denied killing any of the victims or seeing them killed.

We will now address the various objections to evidentiary and procedural rulings by the trial court raised on appeal. No argument is made that there was not substantial evidence to support the conviction.

Prior to Ward's bond hearing in municipal court, an attorney, Ken Cook, was appointed to represent him. Cook went into a hallway to talk to Ward and was accompanied by a police officer with a tape recorder. Cook told Ward that their conversation was being recorded. When Cook asked Ward if there was anything

Ward wanted him to tell the judge, Ward said: "Umm, somethin' came over me, it's just like—I didn't mean to, just somethin' came over me, somethin' just came over me, made me go in that house and stuff like that, I didn't—I just wasn't myself." The trial judge admitted the statement.

Ward argues that the statement was inadmissible because Ward's counsel was ineffective by not preventing him from speaking in front of the officer. This argument was not made to the trial court. At trial Ward argued the statement was inadmissible under the attorney/client privilege. A.R.E. Rule 502. The trial court ruled the statement was spontaneous and was not intended to be a privileged communication between attorney and client. We do not reach the argument of ineffective assistance of counsel because it was not raised below. *Rogers* v. *State*, 289 Ark. 257, 711 S.W.2d 461 (1986).

After Ward was arrested on April 18, 1986, he made a statement to the police. At the conclusion of the questioning, Ward asked the police if they wanted to know the location of the shotgun. They said yes and Ward told them it could be found in a culvert near the victims' home. The trial judge ruled that during Ward's interrogation he had asked for a lawyer at one point, and the officers did not cease their interrogation. All of Ward's statement after that request was excluded from evidence by the trial judge. Ward argues that the shotgun should also be excluded, because this statement was made after Ward had asked for a lawyer. The trial court found the statement was spontaneous and Ward waived his rights. *Edwards* v. *Arizona*, 451 U.S. 477 (1981), does not prohibit the introduction of a statement if a defendant initiates a conversation after he has invoked his right to counsel and interrogation has ceased. *Hendrickson* v. *State*, 285 Ark. 462, 688 S.W.2d 295 (1985); *Hickerson* v. *State*, 282 Ark. 217, 667 S.W.2d 654 (1984). The officers testified they had concluded the interrogation, and as they were leaving the interrogation room, one said 35 minutes later, Ward asked them if they wanted to know where the gun was located. On appeal we consider the totality of the circumstances in such cases to determine if a defendant waives his right to counsel. *Hickerson* v. *State, supra.* In this case, we cannot say the trial judge abused his discretion in his determination.

■ Ward argues that the trial court should have granted a continuance so the defense could procure some witnesses who had been excused. This request was made late one night after the jury had found Ward guilty. The jury decided it wanted to finish the case. This circumstance will not likely recur at another trial. We do observe, however, that the trial judge should not just consider the desires of a jury in deciding whether to proceed into the night as opposed to reconvening the next day. The jury is not aware of a defendant's rights. The sentencing stage in a capital case should be given every consideration, considering both the rights of the state and the defendant.

One theory, if not the main theory, of the defense was that the residence of the victims was used for drug trafficking. Two men, one named Ricky Smith, had planned to rob the place and kill three white people residing there. Ronald Ward's name was mentioned as being "set up" to take the blame. The defense proffered the testimony of John Golden who testified he overheard Ricky Smith make these statements. Golden and his friend, Eddie Langford, drove Smith to Walls, Mississippi, for $20 the day before the murders. Smith was in a hurry, scared and shaking. Golden testified that Smith said "he did what he told him he was going to do," and that Golden would hear about it in the news in a few days. Golden testified that on Monday, April 15, 1983, he told police officials about his conversation with Smith. Golden and a police officer drove to the house in Walls, Mississippi. He said they searched the house and found a brick of cocaine. Eddie Langford offered testimony to corroborate Golden's version of the trip to Mississippi. The trial judge excluded the testimony as hearsay because it may concern another criminal episode.

■ Ward argues the testimony was admissible under an exception to the hearsay rule, A.R.E. Rule 804(b)(3), which provides:

> Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his

position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. A statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused, is not within this exception.

The testimony of Golden and Langford is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. That may have been the basis for the trial court's ruling, but it is not clear. On a retrial the trial judge should so determine before deciding if the proffered testimony is admissible. See 4 Weinstein, *Evidence*, ¶ 804(b)(3)[03] (1985); see also *Blaylock* v. *Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987).

The testimony of Ruth Jones was also proffered and refused by the trial judge. Jones stated that she lived across the street from the victims and that Chris Simmons told her two years before that Simmons' mother, Belinda Simmons, was at home fixing "dope" with some other people. She also said a black man made a delivery to Belinda Simmons at the Simmonses' house. The Simmonses had lived in the victims' house about two years before the murders. The trial judge excluded this evidence as too remote to be relevant. We cannot say he abused his discretion in this regard. *White* v. *Mitchell*, 263 Ark. 787, 568 S.W.2d 216 (1978).

A fourth witness, Deputy Sheriff Jim Robinson, was asked if he had tried to serve a subpoena on Ricky Smith, a/k/a James Brown and Harry Smith, at the Twentieth Century Motel. Robinson said he was told by the manager that Smith checked out the morning of April 12, 1985. This testimony was properly excluded as hearsay. A.R.E. Rule 802.

An argument is made that Ward was denied a complete record for appeal. There was a dispute over the record, and the case was remanded to settle the record, which the trial judge did but not to Ward's satisfaction. This will not likely recur at retrial. However, the trial judge, as well as the bench in general, is reminded that there should not be "off the record" conferences. In

*Fountain* v. *State*, 269 Ark. 454, 601 S.W.2d 862 (1980), we said:

> All bench conferences and in chambers conferences should be 'on the record' unless they involve matters unrelated to the current trial, in which case, a note to that effect may be made.

Such a practice will prevent disputes over the record which can result in the necessity for a new trial.

 The appellant argues that subjecting a juvenile to the death penalty violates the constitution. We have held that the prosecuting attorney has the discretion to charge juveniles in any of three courts. *Sargent* v. *Cole*, 269 Ark. 121, 598 S.W.2d 749 (1980). Arkansas does not expressly prohibit the death penalty for a juvenile. See Note, *The Death Penalty for Juveniles: A Constitutional Alternative*, 7 J. Juv. Law 54 (1983). We join the majority of those states presented with the question which have decided that the imposition of the death penalty on a juvenile is not a per se violation of the eighth amendment to the United States Constitution. *State* v. *Valencia*, 124 Ariz. 139, 602 P.2d 807 (1979); *State* v. *Harris*, 48 Ohio St.2d 351, 359 N.E.2d 67 (1976); *Ice* v. *Commonwealth*, 667 S.W.2d 671 (Ky. 1984); *High* v. *Zant*, 250 Ga. 693, 300 S.E.2d 654 (1983); *Thompson* v. *State*, 724 P.2d 780 (Ok. 1986); *Prejean* v. *Blackburn*, 743 F.2d 1091 (5th Cir. 1984); *Trimble* v. *State*, 300 Md. 387, 478 A.2d 1143 (1984); *State* v. *Battle*, 661 S.W.2d 487 (Mo. 1983); *Cannaday* v. *State*, 455 So.2d 713 (Miss. 1984). We are aware that the United States Supreme Court has not ruled on the question but is expected to do so next term. *Thompson* v. *State*, 724 P.2d 780 (Okla. Crim. 1986), cert. granted, 107 S.Ct. 1284 (1987).

Ward argues that the trial judge should have excluded from evidence Ward's fingerprints which were taken at his first interrogation. Ward makes two arguments. First, an Arkansas statute expressly prohibits fingerprinting of juveniles unless they are in custody for a violation of the law. Ark. Stat. Ann. § 45-419 (Supp. 1985). Second, the police conducted a "round-up" of individuals to gather evidence in violation of the constitution. See *Davis* v. *Mississippi*, 394 U.S. 721 (1969). We do not deem the action of the police in this case to be a round-up as in *Davis*. More importantly, both Ward and his grandmother, who was his guardian, signed a form expressly waiving any objection to

Ward's being fingerprinted.

The trial judge ruled there was a valid waiver of Ward's right not to be fingerprinted. Ward argues that the statute plainly prohibits fingerprinting of a juvenile unless he is in custody for violation of the law. Undoubtedly, this law was passed to insure that juveniles would not have a criminal record unless they were charged. The existence of the statute does not mean such a right cannot be waived, because a constitutional right can be waived. The right to counsel can be waived in a juvenile proceeding. See Ark. Stat. Ann. § 45-413(2) (Supp. 1985). The trial judge inquired whether Ward knew what he was doing, whether his grandmother knew what she was doing, and whether they made a knowing waiver of Ward's right. The judge found that they did. On appeal we determine if a defendant voluntarily and intelligently waived his rights based on the totality of the circumstances and affirm the trial court unless we can say the lower court was clearly wrong. *Hill* v. *State*, 289 Ark. 387, 713 S.W.2d 233 (1980). We find Ward waived his right not to be fingerprinted.

Ward was charged with capital murder pursuant to Ark. Stat. Ann. § 41-1501(1)(c) (Repl. 1977) in that he killed two or more people with premeditation and deliberation. After the trial commenced, the state offered evidence that a rape had occurred. Ward objected to the introduction of this evidence, and the judge ruled it was too late to make the objection; it should have been made before the trial began. The trial judge said the evidence of this felony was part of the *"res gestae"* of the crime and, therefore, relevant. We agree that the evidence was admissible regardless of the particular charge of capital murder. When other criminal acts are intermingled and contemporaneous with one another, they may be proved as part of the whole criminal scheme. *Henderson* v. *State*, 285 Ark. 493, 684 S.W.2d 231 (1985).

However, the trial judge was wrong when he changed the charge to the jury. He instructed the jury, not only on the offense described in the information, but also on the offense relating to murder during the commission of a felony, in this case rape. Ark. Stat. Ann. § 41-1501(1)(a) (Repl. 1977). This was error. *Bosnick* v. *State*, 248 Ark. 846, 454 S.W.2d 311 (1970).

There are different elements of proof to these charges. According to the information, the state had to prove Ward acted with premeditation and deliberation and killed two or more people. As the jury was instructed, the state did not have to prove intent—it only had to prove that the murders occurred during the course of the felony. This is not like the case of *Cokeley* v. *State*, 288 Ark. 349, 705 S.W.2d 425 (1986), where there is no difference in the *elements* of the crime of rape when the question is how the rape was committed.

It is argued that the trial court was wrong in refusing to instruct the jury on Ark. Stat. Ann. § 41-1501(2) (Repl. 1977). We cannot find in the record where this instruction was requested and offered by the defense, where the trial judge ruled on it, or where an objection was preserved. Therefore, we do not reach the question. *Camp* v. *State*, 288 Ark. 269, 704 S.W.2d 617 (1986).

It is argued that the trial judge denied the defendant the right to surrebuttal evidence during the mitigation phase of the trial. We cannot say the trial judge did deny such a request because this was something that arose in an off-the-record conference. It should not recur upon retrial.

Finally, the argument is made that *Batson* v. *Kentucky, supra*, should be applied to the sentencing phase of this case as well as the case in chief. That case applies to any petit jury where the defendant is a member of a cognizable racial group. See also *Roman* v. *Abrams*, No. 85-2191, slip op. (2nd Cir. June 9, 1987).

We find the trial judge did not abuse his discretion in allowing the photographs of the victims into evidence. *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987).

Reversed and remanded.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. The majority opinion is outstanding and will in time become a landmark decision. I do not write to distract from the opinion in any respect. I write instead to appeal to the state and the trial court to try the case in a straightforward manner with the facts and evidence properly presented. It is the responsibility of the trial judge to see that a full

and complete record is preserved.

There are several specific errors which need highlighting. First, the defense attorney who interviewed the appellant while the sheriff recorded the statement was clearly ineffective and this statement should not have been admitted. One can not say with absolute certainty that the introduction of the statement did not affect the result of the trial. I doubt that it did, but there is ample other evidence and there is no need to risk the chance that the United States Supreme Court might reverse.

Secondly, some of the photographs tended to arouse prejudice and passion. These photographs were gruesome indeed. In *Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986), we reversed because the photographs did not illuminate any issue which had not already been conclusively proved. I submit these extra gruesome photographs were not aimed at proof of any relevant matter.

I also feel it was error to exclude the testimony of Officer Robinson that he learned that the witness Smith had checked out of the motel when he went to serve a subpoena on him. He may state what he learned without giving hearsay testimony. Finally, the testimony of Jones and Golden should have been presented to the jury. Credibility of the witnesses is a matter for the jury. The trustworthiness of the testimony of witnesses is not a matter which has heretofore been considered within the discretion of the trial judge.

Any defendant is entitled to a fair and impartial trial before a proper jury. Anything less is not acceptable. This trial was by no means the worst I have seen. However, upon retrial I hope the court will consider the above suggestions.