EASTLING v. STATE.

Opinion delivered March 30, 1901.

69  189
73  321

1. GRAND JURY—RIGHT OF CHALLENGE.—One accused of a felony can not on appeal raise the objection that, although at the time in jail, he was not afforded an opportunity to appear and object to the formation of the grand jury, if in his motion to quash the indictment he did not show that any of the grand jury were disqualified. (Page 190.)

2. FOURTEENTH AMENDMENT—DISCRIMINATION AGAINST NEGRO RACE.— Where, on a motion to quash an indictment against a negro on the alleged ground that the jury commissioners selected no negroes to serve on the grand jury, and that there was a discrimination against his race which denied him the equal protection of the laws of the United States, it was shown that there was 859 white and 175 negro qualified electors in the county, and that no negroes had been selected to serve on a jury in the county for 18 years past, and the jury commissioners who selected the grand jury testified that they selected for grand jurors those whom they believed to be best qualified, and that the question whether or not negroes should be put on the grand jury was not discussed, a finding of the trial judge that negroes were not excluded from the grand jury solely because of their race or color was not erroneous. (Page 191.)

3. MURDER—SUFFICIENCY OF EVIDENCE.—Where, in the course of a dispute over a trivial matter, insulting language was used, and defendant and another negro began shooting at deceased, and he was killed by one of them, a conviction of murder in the first degree will not be sustained. (Page 193.)

4.   SAME—MODIFICATION OF JUDGMENT.—Where, on appeal from a con-
viction of murder in the first degree, the evidence fails to show
premeditation, a necessary element of murder in the first degree,
but shows that defendant was guilty of murder in the second de-
gree, the judgment will be set aside, and the cause remanded with
instructions for the trial court to sentence the defendant for mur-
der in the second degree.   (Page 193.)

Appeal from Perry Circuit Court.

ROBERT J. LEA, Judge.

*Scipio A. Jones* and *J. H. Carmichael,* for appellant.

It was error not to allow appellant to be present at the forma-
tion and impaneling of the grand jury.   Sand. & H. Dig., § 2067;
50 Ark. 542; 42 Ark. 394; 43 Ark. 395; 10 Ark. 631; 177 U. S.
447.   In the selection of the jury appellant was denied the equal
protection of the law.   103 U. S. 370; 100 U. S. 339; *id.* 313;
*id.* 303; 140 U. S. 278; 58 S. W. 97; 177 U. S. 442; 39 Tex. Cr.
Rep. 345.   The evidence fails to show premeditation and deliber-
ation, and the sentence cannot stand for murder in the first degree.
56 Ark. 5.

*Jeff Davis, Attorney General,* and *Chas. Jacobson,* for appel-
lee.

No such discrimination is shown in the selection of the grand
jury as entitled appellant to have the indictment quashed.   100
U. S. 313, 320, 322, 334.

BUNN, C. J.   This is an indictment against the appellant,
Ed Eastling, in the Perry county circuit court, upon which he
was tried and convicted in said court at its August term, 1900,
of murder in the first degree, from which he appealed to this court,
after motions to quash indictment and for new trial were made by
him and overruled.

There were two causes assigned in support of the motion to
quash the indictment.   The first was that the defendant, although
in jail at the time, was not given an opportunity to appear and
object to the formation of the grand jury which found the indict-
ment, as entitled by statute to do in such case; and also because
he was taken before the grand jury, while considering the case,
without his knowledge of the nature of the proceedings had by them,
and without his consent, and while there he was required to make
statements in regard to the alleged crime.

It was irregular to fail to give him an opportunity to challenge the grand jury before they were sworn as such, for the statutory cause, but the defendant does not show that any of the grand jurymen were disqualified under the statute, which showing could be made available as well on the motion to quash as by challenge in the first instance.

, The evidence does not sustain the motion to quash on the ground that the defendant was compelled to testify before the grand jury while investigating the charge against him, but, on the contrary, it appears from the evidence, that while before the grand jury for the purpose of identification, while another was testifying, he was warned that he could not be required to make any statement unless he chose to do so; and it appears that while he made a statement as to the matter leading up to the homicide in this case, he did so by his own request, in order, as he expressed it, that he might tell his side of the transaction.

The second ground of the motion to quash is, in the language of the motion, as follows, to-wit: "Because the jury commissioners appointed to select the grand jury which found and presented said indictment selected no persons of color, or of African descent, known as 'negroes,' to serve on said grand jury, but, on the contrary, excluded from the list of persons to serve as such grand jurors all colored person, or persons of African descent, known as 'negroes,' because of their race and color; that fully one-fourth of the population and of the legal electors who were qualified to serve as such jurors in Perry county were negroes, and that on account of their race and color, they have been excluded from serving on any jury in said circuit court for eighteen years, which is a discrimination against the defendant, who is a negro; and that such discrimination is a denial to him of the equal protection of the laws of the United States."

The allegation constituting the second ground of the motion to quash is to the effect that the absence of negroes on the grand jury was not only a fact, but that it had for its purpose a discrimination against the negro race, and did in fact discriminate against the defendant, and amounted to a denial to him of an equal protection of the laws, as guarantied by the first section of the fourteenth amendment of the constitution of the United States.

It is sufficient to say, in the outset of the discussion of this particular subject, that a mere absence of negroes from the grand jury cannot of itself be considered as a sufficient showing to sus-

tain the motion to quash on this ground. It must appear that the exclusion of the negroes from the grand jury was brought about for the purpose solely of denying the equal protection of the laws to the defendant, or his race, on account of race or color.

The first section of the fourteenth amendment of the constitution of the United States reads as follows, to-wit: "All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the state wherein they reside. No state shall make or enforce any lay which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any persons within its jurisdiction the equal protection of the laws."

Primarily, as will be readily seen from the language, the effect of this first section of the fourteenth amendment is to prohibit the states from making laws which discriminate against the negro race, but recently emancipated when the amendment was adopted; and it has been so construed in many decisions of the federal supreme court. In that view of it congress has legislated upon the subject, and in that view alone, and provided that whenever it shall appear that any law of a state so discriminates, then it shall be ground for removal of any cause affected thereby from the state to the federal court. In such cases, the question is purely one of law,—that is to say, it arises upon the proper construction of the state law,—to determine whether or not the law does really so discriminate. All cases in which that phase of the amendment is the subject of discussion are applicable only incidentally, if at all, to the case at bar, which arises also from the fourteenth amendment, but not from any express language therein contained, but from the construction given to it by the courts.

In *Virginia* v. *Rives,* 100 U. S. 313, Mr. Justice Strong, in delivering the opinion of the court said: "The provisions of the fourteenth amendment of the constitution we have quoted all have reference to state action exclusively, and not to any action of private individuals. It is the state which is prohibited from denying to any person within its jurisdiction the equal protection of the laws, and consequently the statutes partially enumerating what civil rights colored men shall enjoy equally with white persons, founded as they are upon the amendment, are intended for protection against state infringement of those rights. Section 641

[of the Revised Statutes] was also intended for their protection against state action, and against that alone." That was a case in which the application was for removal under said section of the statute. The petition was denied because no discriminating law of the state was called in question by it, but it contained only allegations of a failure to administer the state laws, which were in accord with the federal constitution (as they are in this state). The allegation is one of fact, to be determined in the course of the trial and judicial proceedings as any other fact in the case. Continuing, the learned judge said in that case: "But when a subordinate officer of the state, in violation of state law, undertakes to deprive an accused party of a right which the statute law accords to him, as in the case at bar, it can hardly be said that he is denied, or cannot enforce, 'in the judicial tribunals of the state' the rights which belong to him. In such case it ought to be presumed that the court will redress the wrong. If the accused is deprived of the right, the final and practical denial will be in the judicial tribunal which tries the case, after the trial has commenced. If, as in this case, the subordinate officer whose duty it is to select jurors fails to discharge that duty in the true spirit of the law; if he excludes all colored men solely because they are colored; or if the sheriff to whom a *venire* is given composed of both white and colored citizens neglects to summon the colored jurors only because they are colored; or if a clerk whose duty it is to take the twelve names from the box rejects the colored jurors for the same reason,—it can with no propriety be said the defendant's right is denied by the state, and cannot be enforced in the judicial tribunals. The court will correct the wrong, will quash the indictment or the panel, or, if not, the error will be corrected in a superior court. * * * The assertions in the petition for removal that the grand jury by which the petitioners were indicted, as well as the jury summoned to try them, were composed wholly of the white race, and that their race had never been allowed to serve as jurors in the county of Patrick in any case in which a colored man was interested, fall short of showing that any civil right was denied, or that there has been any discrimination against the defendants because of their color or race. The facts may have been as stated, and yet the jury which indicted them, and the panel summoned to try them, may have been impartially selected."

S C—13

That case is perhaps the most instructive one to be found, as touching the question of the denial of equal rights to 'the negro. The case is in point, in this, that on motion to quash an indictment it is purely a question of fact whether the equal rights of the defendant have been observed in the selection of jurymen, and whether or not he has been discriminated against on account solely of his race or color. If there are other lawful reasons for the exclusion, then the motion to quash will not necessarily be sustained. It was shown in evidence in the case at bar that there were in Perry county at the time 859 white and 175 colored qualified electors, and that no colored men had been selected to serve as jurymen in the county for eighteen years past.

As to the personal qualifications of the negro electors in the county to serve as jurors, one of the witnesses testified: "I have lived in Perry county from boyhood until about five years ago. I have practiced law; and attended the courts at Perryville for twenty-five years. There are 175 colored voters in Perry county. The colored people have schools and churches in Perry county accessible to them all, and have their own preachers and teachers. I know colored men in Perry county whom I think qualified to sit on grand and petit juries. I know colored men in the county to whom I think no personal objection could be raised against as jurors. Until about fifteen years ago colored men were occasionally selected on grand and petit juries, but since then none have been selected. All of the circuit judges that have appointed jury commissioners in the last twenty years have been white, and the jury commissioners have been also white. Yes, there are many colored or negro electors who live in Perry county, with good character, approved integrity, sound judgment and reasonable educational attainments and qualifications. The number of negroes qualified to serve as jurors is small compared with the number of white persons who possess such qualifications, and the commissioners can more easily select the juries from the white people than from the negroes."

It is, of course, always a question with the jury commissioners to determine what portion of the white, as well as of the negro, electors are qualified really to serve as grand and petit jurymen, although all of these are qualified electors. It is, of course, a fact, as stated by the witness, that the proportion of colored men thus qualified is much less than the corresponding proportion of white men. On the question the presiding judge took the testi-

mony of many witnesses, among them two of the jury commissioners who had selected the grand jury that found the indictment. J. C. Dickinson testified: "I was one of the jury commissioners who selected the grand jury who indicted Ed Eason (Eastling). Q. Do you know any negroes in the county who are qualified to serve on the jury? A. I think there are some. Q. Would you select a negro on the jury, if he possessed the qualifications of a juror? A. I would not, as I knew a white man was as well or better qualified. Q. Then this is why you did not put any of them on the jury? A. Yes." On cross-examination, in answer to the question, "Was the question whether or not negroes should be put on the jury discussed by the jury commisisoners or mentioned by any one of them," he answered that it was not. He said the commissioners had before them a list of all persons in the county who had paid their poll tax, and that they selected from the entire list of pool tax payers the men they believed to be best qualified to serve on the grand jury.

L. G. Volmon testified that he was one of the jury commissioners that selected the grand jury which found the indictment, and that the question whether or not negroes should be put on the juries was never discussed nor mentioned; that he selected the men to serve on the grand jury whom he believed to be the best qualified.

The trial judge overruled the motion to quash on this ground also, and, in effect, found from the evidence that colored men were not excluded from the grand jury solely because of their race or color.

There are obviously many considerations which enter into a question like this. Here was a negro accused of the homicide of another negro. Indeed, the act of the killing lay between the defendant and still another negro. In such a case there is little reason for believing that white men comprising the grand jury would or did act otherwise than with a desire to see the criminal laws enforced, and the sequel proves the unquestioned character of their findings. Race prejudices could have nothing to do with their conclusions, so far as can be seen. The jury commissioners, who testified, testified that they sought to select men the best qualified to serve as grand jurymen. It is true, one of them said that he would not select a negro as long as he knew of a white man equally as well qualified or better qualified than the negro. As between two persons of equal qualifications, it is the province of a jury

commissioner to make a selection, and it is difficult to say how his act could be called in question in so doing. And it is his duty to select the best of any number. Jury commissioners are required by statute to select from the electors of the county sixteen persons to serve as grand jurors at the ensuing term of the circuit court. These must be of good character, of approved integrity, of sound judgment and of reasonable information.

Under our statutes the objections that may be successfully interposed to a person summoned to serve as a grand juror are few indeed, for the language of the statute is: "Every person held to answer a criminal charge may object to the competency of one summoned to serve as a grand juror, before he is sworn, on the ground that he is the prosecutor or complainant upon any charge against such person, or that he is a witness on the part of the prosecution, and has been summoned or bound in a recognizance as such; and, if such objection is established, the person so challenged shall be set aside." Sand. & H. Dig., § 2067. Except for the causes named, the question of bias or prejudice does not enter into the composition of the grand jury in this state. In these respects the selection of grand jurymen is upon different grounds from those upon which petit jurymen are selected, although under the statute the same general qualifications are required in both. As the jury commissioners testified that they endeavored to select men the best qualified to serve as grand jurymen, and the evidence to the contrary being not very definite, under the rule we see no reason to overturn the findings of the trial judge, and his judgment on this ground of the motion will not be disturbed.

Our attention has been called to the case of *Smith* v. *State,* decided in the criminal court of appeals of Texas on June 29, 1900, and reported in 58 Southwestern Reporter, page 97. In that case a motion similar to the one under consideration was sustained. It appears, however, that that decision was expressly made to conform with the decision of the United States supreme court in the case of *Carter* v. *State,* then but recently decided on appeal from the court of criminal appeals of Texas, since reported in 20 Supreme Court Reporter, 687, 177 U. S. 442, decided April 16, 1900, which was thought to be identical with *Smith* v. *State, supra,* and it was said expressly in the opinion in the latter case that the same was rendered because of the ruling in the former, and that otherwise the opinion in *Smith* v. *State* would have been

different. On examination of the opinion of the Supreme Court in *Carter* v. *State,* we find the identical points were made in the motion to quash as in the case of *Smith* v. *State,* and the same facts substantially stated therein; but the trial court in *Carter* v. *State* refused to permit the defendant to introduce testimony to sustain. his motion to quash, and this, in truth, was the point upon which the court decided that case, and not upon the evidentiary facts at all. This is the language of the court: "The bill of exceptions tendered by the defendant, and allowed by the presiding judge, and made part of the record by his order, explicitly states that, 'after reading the said motion, the defendant asked leave of the court to introduce witnesses, and offered to introduce witnesses, to prove and sustain the allegations therein made; but the court refused to hear any evidence in support of the said motion, and thereupon overruled the same, without investigating into the truth or falsity of the allegations of said motion, to which action of the court the defendant then and there excepted.' It thus clearly appears by the record," continues the court in that case, "that the defendant, having duly and distinctly alleged, in his motion to quash, that all persons of the African race were excluded, because of their race and color, from the grand jury which found the indictment, asked leave of the court to introduce witnesses, and offered to introduce witnesses, to prove and sustain that allegation; and that the court refused to hear any evidence upon the subject, and overruled the motion, without investigating whether the allegation was true or false."

The judgment of reversal was then entered, not on the evidence, but because in reality the trial court, having refused to admit evidence, and overruled the motion without considering any evidence in relation thereto, in effect decided the case upon the allegations of the motion, which being admitted as true by this action of the court, its decision was erroneous. No such issue as this was presented in the case of *Smith* v. *State,* and the decision of the criminal court of appeals therein seems to have been rendered on a misapprehension of the real meaning of the decision in *Carter* v. *State.* No such issue arises in the case at bar as was the turning point in the Carter case, for the trial court in this case heard the evidence in full on the motion to quash, and ruled on the facts thus ascertained.

The only other ground we will consider is whether or not the evidence is sufficient to sustain the charge of conviction of murder

in the first degree. It appears from the testimony that these negroes, with others, had been engaged in the game of "craps" in what was known as the "stockade;" that, coming out of the stockade, a quarrel arose between the defendant and deceased over a trivial matter, in the course of which insulting language was used between them, and immediately the defendant began firing upon the deceased with a pistol, and simultaneously another negro began firing upon the deceased from a somewhat different direction, and thus the deceased was killed, leaving the question who did really kill the deceased more or less in doubt, there seeming to be no connection between those who did the shooting. Under the circumstances we are of opinion that the evidence does not show that premeditation and deliberation necessary to constitute the crime of murder in the first degree, but that there is sufficient evidence to justify a verdict of murder in the second degree. The judgment, for that reason, is reversed, and the cause remanded, with directions to the circuit court to set aside the judgment and verdict for murder in the first degree, and to sentence the defendant as for murder in the second degree.

BUNN, C. J., and BATTLE, J., do not concur in the order to sentence, but think, under the circumstances, the cause should be remanded for a new trial. Otherwise, we concur in the opinion and judgment.