Daryl (Darrell) HODGES *v.* STATE of Arkansas

CA CR 88-182                                          767 S.W.2d 541

Court of Appeals of Arkansas
Division I
Opinion delivered April 12, 1989

*Wilson, Bell & Neal Law Office*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant, Daryl (Darrell) Hodges, was convicted by a St. Francis County jury of delivery of a controlled substance in violation of Ark. Stat. Ann. § 82-2617 (Supp. 1985) [now codified as Ark. Code Ann. § 5-64-401 (1987)]. On appeal, it is argued by counsel, who was not counsel at the trial, that the trial court erred in refusing to grant appellant a new trial on the grounds that the state's use of its peremptory jury challenges violated his constitutional rights and because of the ineffective assistance of trial counsel.

Ivan Whitfield, a Pine Bluff police officer, testified at trial that in June 1987, while helping the Arkansas state police investigate the drug trade in and around Forrest City, Arkansas, he purchased two packages of cocaine from the appellant for $25.00 each. According to Whitfield, this occurred at a night club called the Players Palace on the north side of Forrest City. Appellant's defense was mistaken identity. He claimed he had been mistaken for one of his brothers, possibly Ronnie, or another brother, Theo, who had signed the club's register the night of the alleged purchase. Appellant denied that he sold the cocaine to Officer Whitfield, and testified that he was never in the Players Club during the summer of 1987.

The jury that found appellant guilty was composed of ten white people and two blacks. However, because the prosecution used five of its six peremptory challenges to eliminate either three or four blacks from the jury, the appellant contends his constitutional rights were violated. At the hearing on the motion for new trial, appellant's trial attorney admitted that he did not object to the prosecution striking the blacks, even though appellant was black and the proportion of blacks on the jury was not comparable to the nearly 50% black population of the county.

In *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987), the Arkansas Supreme Court discussed and followed *Batson* v. *Kentucky*, 476 U.S. 79 (1986), in which the United States Supreme Court held that a defendant could make a prima facie case of racial discrimination in jury selection by showing that the

totality of the relevant facts gives rise to an inference of discriminatory purpose; or by showing there has been a total or seriously disproportionate exclusion of members of the racial group from the jury venires; or by showing a "pattern" of strikes against members of the group; or by the prosecutor's questions or statements during voir dire examination. See summary in *Ward*, 293 Ark. at 92-93. The opinion in *Ward* said: "This does not mean black people cannot be struck from a jury. It means that if a defendant makes a prima facie case of intentional discrimination, the state must offer some explanation other than race." Merely denying a discriminatory motive or affirming good faith is not enough; the prosecutor must "articulate a neutral explanation related to the particular case to be tried." The trial judge must then conduct a "sensitive inquiry" into the direct and circumstantial evidence available to decide if the state has made an adequate explanation. *Ward*, 293 Ark. at 92-93.

Although the jury in *Ward* did not contain a black juror and there were two black jurors in the present case, the appellant contends that *Batson* "requires the total elimination of racial consideration in the selection of the jury process." See *Batson* where the Court quotes from a prior opinion that "total or seriously disproportionate exclusion of Negroes from jury venires is itself such an 'unequal application of the law . . . as to show intentional discrimination.' " 476 U.S. at 93.

So, in the present case, appellant argues that the striking of the three or four potential black jurors would raise the presumption of racial exclusion which would have required the prosecutor to make "a neutral explanation" related to the case and the court to make a "sensitive inquiry" into the prosecution's reasons for excluding those jurors. However, no objection was made by appellant's trial counsel, and no inquiry was made by the judge.

Appellant recognizes that this same situation was presented in *Hicks* v. *State*, 143 Ark. 158, 220 S.W. 308 (1920) where the court held the claim that no member of the defendant's race served, or was summoned to serve, on the jury was made too late when it was first raised in a motion for new trial. *See also Tillman* v. *State*, 121 Ark. 322, 181 S.W. 890 (1915); and *Eastling* v. *State*, 69 Ark. 189, 62 S.W. 584 (1901). But present counsel for appellant "offers for consideration of the [appellate] Court, that

the requirement of *Batson* places a burden upon the [trial] Court to make a sensitive inquiry for the protection of the Appellant's constitutional rights to a fair and impartial jury regardless of inaptitude of counsel below." Counsel urges that, if the prosecution eliminates more than one black from the jury, the trial court should inquire, *sua sponte*, about the prosecution's motives and make a sincere and reasoned effort to evaluate the genuineness and sufficiency of its explanation in the light of all the circumstances of the trial.

It has long been the rule in this state that an argument for reversal will not be considered on appeal in the absence of an appropriate objection in the trial court. *Fretwell* v. *State*, 289 Ark. 91, 708 S.W.2d 630 (1986); *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). A defendant must object to perceived error at the first opportunity. *Young* v. *State*, 283 Ark. 435, 678 S.W.2d 329 (1984); *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981). Moreover, we are not persuaded that the rule should be abandoned. The state's brief has called our attention to the case of *People* v. *Ortega*, 156 Cal. App. 3d 63, 202 Cal. Rptr. 657 (1984), where the court considered whether an objection, made in the form of a motion for mistrial on the grounds that the prosecution had systematically excluded all Hispanics from the jury, was untimely when not made until after the jury was sworn. The court stated five reasons for requiring an objection to be made during the jury selection process:

> First, an early objection will facilitate the moving party's counsel in making the best possible prima facie case. Second, an early objection will place the opposing party on notice so that counsel may consider whether and on what basis to continue using peremptories against cognizable group members and to prepare to make the best explanation feasible. Third, an early objection will alert the court so that it can intelligently rule on the questions of prima facie case and, if one is found, explanations. In other words, this procedure will insure that the court will pay close attention to the questions asked of and answered by the jurors and other matters bearing on the use of peremptory challenges. . . .

> Fourth, this procedure will promote the efficient and

economic administration of justice by permitting the court, if it finds discrimination in the use of peremptory challenges, to dismiss the existing jury panel and obtain a new panel without having to wait until the selection process has been completed.

Finally, this procedure will help the courts and parties achieve the most fair and correct result, both below and on appeal.

202 Cal. Rptr. at 661. We agree with this reasoning and also point out that it has been stated numerous times by our supreme court that Arkansas does not subscribe to the doctrine of plain error. *See Fretwell* v. *State*, and *Wicks* v. *State, supra.* And even error of constitutional dimension may be waived. *Collins* v. *State*, 271 Ark. 825, 828, 611 S.W.2d 182 (1981). We also agree with another reason stated in the brief filed for the state—that allowing defendants to raise an objection for the first time in a motion for new trial would give them "license to 'lie behind the log' waiting to see if they obtain an adverse verdict before complaining about the jury selection process." In *Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986), the court said, "The defendant cannot wait to see the full strength of the state's case before bringing his request to the attention of the trial court." *See also Mosby* v. *State*, 249 Ark. 17, 457 S.W.2d 836 (1970), and *Underdown* v. *State*, 220 Ark. 834, 250 S.W.2d 131 (1952), which held that irregularities affecting the selection or summoning of a jury panel may constitute ground for a new trial only if timely objection is made prior to the verdict. Thus, we decline to allow the issue of the racial composition of the jury to be raised in this case on appeal without a proper objection below.

Appellant also argues that it was error for the trial court to refuse to grant him a new trial on his claim of ineffective assistance of counsel. He contends trial counsel's failure to object to the prosecution's use of its peremptory challenges to eliminate three or four blacks from the jury panel is ample demonstration of trial counsel's incompetence. We do not agree. Trial counsel testified at the hearing on the motion for new trial that he was going to strike two of these people anyway. He said he had no problems with the racial makeup of the jury and was more concerned about the number of women on the jury than whether

the members of the jury were black or white. Second guessing an attorney's trial strategy is not sufficient to show the ineffective assistance of counsel necessary to obtain a new trial on this point. *Hicks* v. *State*, 289 Ark. 83, 709 S.W.2d 87 (1986). The defendant must show that trial counsel's performance was so deficient and the errors made so serious that the sixth amendment to the United States Constitution has been violated and that the defendant has been deprived of a fair trial; to show denial of fair trial, prejudice must be shown—that there is a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Hicks, supra.* We cannot say that appellant was denied a fair trial.

Affirmed.

CRACRAFT and JENNINGS, JJ., agree.