Wali MUHAMMED v. STATE of Arkansas

CA CR 88-203 · 769 S.W.2d 33

Court of Appeals of Arkansas
Division I
Opinion delivered April 26, 1989
[Rehearing denied May 24, 1989.*]

---

*Rogers, J., not participating.

*John Wesley Hall, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Chief Judge. This appeal comes to us from Pulaski County Circuit Court, Fifth Division. Appellant, Wali Muhammed, appeals his conviction of theft of property by deception valued over $2,500.00, a violation of Arkansas Code Annotated Section 5-36-103 (Supp. 1987), and the sentence imposed therefor. We affirm.

Appellant was charged by information filed August 3, 1987, with multiple offenses; however, this appeal concerns only appellant's conviction on the count of theft by deception. With regard to that offense, the information alleged that appellant, with the purpose of depriving the true owner of its property, knowingly obtained the property of Allstate Insurance Company by deception, such property having a value of in excess of $2,500.00. Appellant was tried by a jury and found guilty as charged and sentenced to five years imprisonment. From the judgment, this appeal arises.

For reversal, appellant raises the following three points: (1) The trial court erred in refusing to grant defendant's motion for mistrial because of the judge's comment and conduct toward defense counsel during voir dire; (2) the trial court erred in permitting the state to excuse black veniremen from the jury panel without being required to show a sufficient racially neutral basis, thereby denying appellant the equal protection of laws and a fair trial; and (3) the evidence is insufficient to support the verdict on the charge of theft by deception.

Where the sufficiency of the evidence is challenged on appeal of a criminal conviction, the appellate court is required to review the sufficiency of the evidence prior to considerations of trial errors. *McCraw* v. *State*, 24 Ark. App. 48, 748 S.W.2d 36 (1988). This court considers the evidence in the light most favorable to the appellee and if there is substantial evidence to support the jury's finding of guilt, we must affirm. *Harris* v. *State*, 15 Ark. App. 58, 689 S.W.2d 353 (1985). Circumstantial evidence can present questions to be resolved by the trier of fact and be the basis to support a conviction. *Yandell* v. *State*, 262 Ark. 195, 555 S.W.2d 561 (1977). The fact that evidence is circumstantial does not render it insubstantial. *Shipley* v. *State*, 25 Ark. App. 262, 757 S.W.2d 178 (1988). Viewed in the light most favorable to appellee, the evidence reflects that prior to the

incident in question, a conflict existed between appellant and another individual over ownership of a 1975 Mercedes Benz automobile which involved pending civil litigation. The car was reported stolen in November of 1985 and appellant, as insured, filed a claim for the stolen vehicle with the insurance company insuring the car. Pursuant to appellant's claim, the insurance company initiated an investigation and spoke with appellant on several occasions. In February of 1986, the insurance company paid appellant $7,120.00 on the loss and appellant subsequently signed a release relinquishing all rights to the car, if found. In April of 1987, the car was found in the back yard of appellant's brother's home. Collectively, the testimony of appellant's brother and sister-in-law revealed that they did not see who parked the car in their back yard; however, they testified that appellant asked for and received permission to park the car there. Additionally, they testified that they were not sure exactly how long the car was parked in their yard prior to its discovery but it had been there possibly for months. The car was not driven or moved while in this location.

■■ Appellant's testimony revealed that he used the insurance proceeds he received in February of 1986 from the theft of the Mercedes to purchase a 1986 Cadillac. He also testified that he became aware of the location of the Mercedes Benz in December of 1986 and arranged through his attorney for its delivery to his brother's yard because he did not have space to store it at his home. Although appellant testified that he wrote a letter in December of 1986 notifying the insurance company of the car's location and produced a copy of such a letter at trial, the insurance company's representative testified that no such information was received by the company concerning the car's location. Furthermore, the letter was not in the insurance company's file produced in court. Thus, conflicting evidence was before the jury; however, decisions regarding the credibility of the witnesses are for the trier of fact, in this instance the jury, and the jury was not required to believe the explanation given by appellant, who was the person most interested in the outcome of the trial. *Core* v. *State*, 265 Ark. 409, 578 S.W.2d 581 (1979). Furthermore, the appellate court need only consider testimony lending support to the jury verdict and may disregard any testimony that could have been rejected by the jury on the basis of

credibility. *Sparks* v. *State*, 25 Ark. App. 190, 756 S.W.2d 911 (1988).

Appellant argues that the above facts are insufficient to support his conviction and that the jury engaged in surmise and conjecture in finding him guilty of theft of property by deception. A person commits this crime if he knowingly obtains the property of another person, by deception or threat, with the purpose of depriving the owner thereof. Ark. Code Ann. § 5-36-103 (Supp. 1987). The jury was instructed that the definition of deception is the failure to correct a false impression that the defendant knew to be false and that he created or reinforced. *See* Ark. Code Ann. § 5-36-101(3)(A)(iii) (Supp. 1987). The evidence revealed that appellant collected the insurance money for the Mercedes he reported stolen and relinquished all rights to the automobile at that time. Notwithstanding the above facts, appellant later found the car and arranged for it to be taken to his brother's back yard where he allowed it to remain for four or five months until the police discovered its location. The jury could have concluded from the circumstances that appellant knowingly obtained the property of another by failing to correct a false impression that he knew to be false and that he created or reinforced. Viewing all evidence in the light most favorable to appellee, we find substantial evidence from which the jury could have reached its conclusion without resorting to speculation and conjecture.

Secondly, appellant argues the trial court erred in refusing to grant his motion for a mistrial because of the judge's comment and conduct toward defense counsel during voir dire. After the state exercised two of its peremptory challenges to remove black veniremen, appellant's counsel made an objection at the bench to the state's use of the challenges. *Batson* v. *Kentucky*, 476 U.S. 79 (1986). The state gave its reasons for striking these two veniremen and pointed out that one black juror was in the panel. An exchange between the court and defense counsel then occurred at the bench regarding the objection which culminated with the court telling counsel to "stand down" and ordering him to counsel table. Voir dire continued and final jurors, including an alternate, were chosen. During this time several other conversations were had between the court and defense counsel regarding completion of the record on issues in the case. After the jury was selected, the court allowed defense counsel to complete his record with regard

to the *Batson* peremptory challenge issues. Appellant then moved for a mistrial based on the court's tone of voice denoting displeasure toward defense counsel at the initial bench conference indicating to the jury that counsel had been disrespectful. Also, it was contended that the court's remarks could be heard throughout the courtroom. Thereafter, without waiving his motion, counsel requested that the court specifically admonish the jury that remarks of the court to the defense attorney which they may have overheard were not to be held against defendant or defense counsel. The court allowed evidence on the matter in chambers and defense counsel called a bystander who testified that he could not hear all of the conversation in question but he heard the judge say "sit down"; however, he was unsure that the court was directing the remark to only one attorney. The defendant was also called and stated that he heard the remarks by the court.

In the interest of a fair trial, the court granted defense counsel's request and asked for a show of hands from the jurors regarding any remarks they may have heard him address to defense counsel during either bench conference. Five jurors responded affirmatively and the court explained to them that defense counsel's credibility was not in issue and inquired if they felt prejudiced toward defendant or counsel after overhearing the remark. The court generally explained his role and that of the attorneys in the voir dire process, as well as the role of the jurors in the trial. The court then questioned each juror who raised their hand individually in chambers. The jurors related to the judge what they heard and their impressions. Each generally related that they heard the remark by the court telling defense counsel to sit down but each stated he or she was not prejudiced by the remark and stated it would not affect their decision in the case. Defense counsel's renewed motion for mistrial was denied at that time by the court. Thereafter, in open court, the judge clarified another remark overheard by one of the jurors and admonished the jury.

The granting of a mistrial is a drastic remedy and should be resorted to only when justice cannot be served by continuing with the trial and when no other method exists by which the prejudice may be removed. *Avery v. State*, 15 Ark. App. 134, 690 S.W.2d 732 (1985). The trial judge is vested with

considerable discretion in acting on motions for mistrial because of his superior position to determine the possibility of prejudice. *Drew* v. *State*, 8 Ark. App. 120, 648 S.W.2d 836 (1983). The judge's exercise of that discretion will not be reversed absent manifest abuse. *Id.*

Here, appellant contends that his right to a fair trial was prejudiced by the remarks of the trial court to defense counsel. We disagree. After issue was taken with the remarks, the court diligently worked with defense counsel in allowing him to complete his record on the *Batson* issue. Additionally, the court complied with all of defense counsel's requests for admonitions and explanations, and held lengthy discussions to clarify the matter. The court granted appellant's request to question jurors both collectively and individually regarding the remarks made at the bench conference. The court denied appellant's motion after satisfying himself that no prejudice resulted from his remarks. We agree with appellant's contention under *West* v. *State*, 255 Ark. 668, 501 S.W.2d 771 (1973) that the trial judge has the ability to influence the jury, and remarks by the trial judge may tend to prejudice a litigant; therefore, the judge should preside with impartiality and be cautious in his language. However, we also note that trial judges by necessity are granted great power and discretion to preserve the order of their courtrooms and have at their command an arsenal of sanctions to see that the rules are followed, including admonishment of the attorney at the bench or before the jury. *Maulding* v. *State*, 296 Ark. 328, 757 S.W.2d 916 (1988). In any event, even if it could be argued that appellant suffered some prejudice from the trial judge's remark, reversal is not warranted in light of the convincing evidence of guilt and the judge's total compliance with the numerous requests of defense counsel, including admonitions to the jury. We will not reverse for errors which do not affect the essential fairness of a trial. *Id.* A defendant is entitled to a fair trial, not a perfect one. *Scherrer* v. *State*, 294 Ark. 227, 742 S.W.2d 877 (1988). On the record before us, we cannot say the trial judge abused his discretion in denying appellant's motion.

Lastly, we address appellant's contention that the court erred in permitting the state to excuse black veniremen from the jury panel without requiring the state to show a sufficient racially neutral basis, thereby denying appellant equal protection of the

law and a fair trial.

■ This court recently stated the pertinent law with regard to this issue in *Hodges* v. *State*, 27 Ark. App. 154, 767 S.W.2d 541 (1989) as follows:

> In *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987), the Arkansas Supreme Court discussed and followed *Batson* v. *Kentucky*, 476 U.S. 79 (1986), in which the United States Supreme Court held that a defendant could make a prima facie case of racial discrimination in jury selection by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose; or by showing there has been a total or seriously disproportionate exclusion of members of the racial group from the jury venires; or by showing a "pattern" of strikes against members of the group; or by the prosecutor's questions or statements during voir dire examination. See summary in *Ward*, 293 Ark. at 92-93. The opinion in *Ward* said : "This does not mean black people cannot be struck from a jury. It means that if a defendant makes a prima facie case of intentional discrimination, the state must offer some explanation other than race." Merely denying a discriminatory motive or affirming good faith is not enough; the prosecutor must "articulate a neutral explanation related to the particular case to be tried." The trial judge must then conduct a "sensitive inquiry" into the direct and circumstantial evidence available to decide if the state has made an adequate explanation. *Ward*, 293 Ark. at 92-93.

■ *Kidd v. State*, 24 Ark. App. 55, 748 S.W.2d 38 (1988), relies on *Batson* and generally establishes that the trial court has a duty to determine whether the state has rebutted the defendant's prima facie case of purposeful discrimination and that such a finding is a question of fact turning largely on evaluation of credibility.

In the present case, the jury that found appellant guilty was composed of eleven white people and one black person. However, because the state used peremptory challenges to excuse two of the three black veniremen from the jury and appellant is black, appellant contends his constitutional rights were violated. The parties disagree as to whether appellant made out a prima facie

case of purposeful discrimination as required by *Batson*. We do not agree that appellant made a prima facie case of purposeful discrimination; however, for purposes of this appeal, we will address the issue as if a prima facie case were made.

In response to the defendant's *Batson* challenge, the court asked for a response from the state. The state responded with the following explanation regarding the basis upon which it utilized its peremptory challenges:

> In order to protect the record for the State, in all due respect to the Supreme Court opnion [sic], and the State contends that it should be reconsidered. Secondly, that the Defense has not shown any pattern and practice of disparate treatment by the State or this particular Prosecutor. Third, I would note that we did strike a white juror, also we have left a black juror on this panel. Also, in reference to things that are work product with the State, we do keep notes from past trials. And Ms. York sat on a trial before that resulted in a not guilty verdict. And I talked about this matter with co-counsel and in our discretion, we struck her because of that. As to Mr. Guy Phillips, he did state that he knew Mr. Muhammed. He thought he did from school. Neither party went any further with that. But I think that's within my discretion there.

Here, the trial judge was obviously convinced that the state gave racially neutral explanations and that it did not intentionally use its peremptory challenges to keep black people from the jury. The court required the state to explain why it excluded the two black veniremen and its determination that the challenges were made for racially neutral reasons was a permissible finding under *Batson*. Further, the evidence reveals that there was a black person on the panel, the state utilized a peremptory challenge to exclude a white person from the jury, the state had strikes remaining, and there is no indication of discrimination in the record. Therefore, deferring to the trial court's presence during voir dire and its superior position to judge the credibility of the prosecutor's statements, we conclude that appellant's argument is without merit.

Affirmed.