Roger Leland BROWN *v.* STATE of Arkansas
CA CR 91-97                                              827 S.W.2d 174
Court of Appeals of Arkansas
En Banc
Opinion delivered April 1, 1992
[Rehearing denied April 29, 1992.*]

*Cooper and Mayfield, JJ., would grant rehearing.

*Adams & Nichols*, by: *Johnny L. Nichols*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ELIZABETH W. DANIELSON, Judge. Appellant Roger Brown was convicted by a jury of driving while intoxicated, third offense, and of refusal to take a breathalyzer test. He was sentenced to six months in the county jail and fined $5,000. His driver's license was suspended for two years on the DWI charge and for six months on the refusal to take a breathalyzer test. Upon review of the points assigned as error by appellant, we affirm the convictions.

In the course of his patrol duties on April 26, 1990, Officer Mike Edwards of the Harrison police department left the city limits, driving north on Cottonwood Road. His purpose was to patrol two subdivisions of the city, which he testified could only be reached by leaving the city, driving through the county, and then reentering the city at the subdivisions. As he was sitting within the city limits, Officer Edwards observed appellant's vehicle drive by on Cottonwood Road, which was outside the city limits, at an excessive rate of speed. Officer Edwards testified that appellant was clocked on radar as going 55 miles an hour in a 40 mile an hour speed zone and that appellant's vehicle was closing in on the vehicle in front of him at a rate deemed dangerous by the officer.

Officer Edwards immediately pulled out behind appellant and turned on his blue lights. Appellant did not pull over and the officer continued to follow him for about a mile. The officer observed appellant negotiate a sharp curve in a "staging maneuver," which the officer testified indicates the driver has impaired motor skills. Appellant crossed the center line about three times during this process. Appellant then pulled over and stopped on a side street.

As appellant got out of his vehicle, the officer observed him

walking in a halting manner and using the vehicle for support as he walked towards the officer. Officer Edwards met appellant somewhere between the two vehicles and detected a strong odor of alcohol. Based on this and other observations, including appellant's slurred speech, bloodshot eyes, and unsteadiness, the officer believed appellant to be intoxicated. A backup unit arrived and the two officers conducted field sobriety tests, one of which was a gaze nystagmus test. Appellant performed poorly on the tests and was arrested for driving while intoxicated. Appellant was taken to the Harrison police station, where he refused to take a breathalyzer test.

Appellant's first argument on appeal is that the trial court erred in denying appellant's motion to suppress evidence on the grounds that the arresting officer lacked territorial jurisdiction for the arrest. Appellant contends that because his conduct and the arrest occurred outside the city limits, the arrest was illegal and the unlawfully obtained evidence should have been suppressed. In reviewing a trial court's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances and reverse only if the ruling was clearly against the preponderance of the evidence. *Johnson* v. *State*, 27 Ark. App. 54, 766 S.W.2d 25 (1989).

In support of his argument, appellant relies on *Perry* v. *State*, 303 Ark. 100, 794 S.W.2d 141 (1990), in which the supreme court found that an arrest outside the officer's territorial jurisdiction was illegal and the evidence unlawfully obtained should have been suppressed. In *Perry*, the court noted the well-established rule that a "local police officer acting without a warrant outside the territorial limits of the jurisdiction under which he hold office is without official power to apprehend an offender, unless he is authorized to do so by state statute." 303 Ark. 100 at 102. The court further noted that the State of Arkansas has authorized local police officers to act outside their territorial jurisdiction in four instances: (1) under the "fresh pursuit" doctrine, codified at Ark. Code Ann. § 16-81-301 (1987); (2) when the peace officer has a warrant of arrest, Ark. Code Ann. § 16-81-105 (1987); (3) when a local law enforcement agency requests an outside officer to come within the local jurisdiction and the agency the outside officer is from has a written policy regulating its officers when they act outside their

jurisdiction, Ark. Code Ann. § 16-81-106 (Supp. 1991); and (4) a county sheriff may request that a peace officer from a contiguous county come into the requesting sheriff's county under Ark. Code Ann. § 5-64-705 (1987) in connection with violations of drug laws. *See Perry*, 303 Ark. at 102-103.

In *Perry*, a Searcy police officer arrived at a lodge and parking lot area, which was located outside the city limits but surrounded on three sides by the city. As the officer was driving across the lot to get to another part of his route inside the city, he saw a car parked with its lights on and motor running, and a man slumped over the steering wheel. Upon discovering that the man was drunk, the officer detained him and called for the county sheriff.

We believe *Perry* is distinguishable from the case at bar and that Officer Edward's actions were justified under the fresh pursuit doctrine. *See* Ark. Code Ann. § 16-81-301 (1987). Unlike Officer Edwards, the officer in *Perry* was not within his territorial jurisdiction when he first observed the defendant. His detention of the defendant could not be justified under any of the four situations in which a local police officer is authorized to act outside his territorial jurisdiction.

In *Smith* v. *City of Little Rock*, 305 Ark. 168, 806 S.W.2d 371 (1991), a UALR campus patrolman was within his territorial jurisdiction when he observed the defendant driving in an erratic manner on an adjacent street, which was also within the officer's jurisdiction. The patrolman pursued the vehicle to an area that was off campus and not adjacent to the campus, where the defendant was arrested for DWI. Although the patrolman was outside his territorial jurisdiction when he made the arrest, the supreme court held that given his firsthand information of the defendant's conduct and because he began pursuit within his jurisdiction, the patrolman was well within the bounds of his authority when he pursued the defendant for four blocks and made the arrest. *Smith*, 305 Ark. at 172.

Because Officer Edwards was within his territorial jurisdiction when he first observed appellant driving in a danger-ous manner, and began his pursuit of appellant from this point, the subsequent arrest was authorized under Ark. Code Ann. § 16-81-301 (1987), the "fresh pursuit" doctrine. The trial court

properly denied appellant's motion to suppress.

Appellant's second contention is that the trial court erred in allowing testimony concerning the details and results of a field sobriety test known as the "horizontal gaze nystagmus" test. Appellant objected to this testimony on the basis that there was no foundation laid for the witness to testify as to how the biological effects of alcohol could be gauged by the gaze nystagmus test. Following this objection, the officer testified as to the training he had received at the University of Arkansas's DWI school, including a course that dealt in depth with the horizontal gaze nystagmus test.

Appellant relies on *Middleton* v. *State*, 29 Ark. App. 83, 780 S.W.2d 581 (1989), in which we held that the arresting officer's testimony was insufficient to provide an evidentiary foundation for admission of the test results. The appellant in *Middleton* did not argue that the arresting officer had insufficient training or experience to administer the test, but instead contended only that the test itself was invalid. This court stated that we need not decide whether or not gaze nystagmus tests are per se inadmissible because the proper foundation had not been laid to establish the reliability, accuracy, and validity of the test.

■■ Again, we need not decide whether the horizontal gaze nystagmus test is per se inadmissible because the appellant did not object to the validity of the test, but objected only that there had been "no foundation laid to *qualify this witness* to testify about the biological effects of alcohol and how those effects can be gauged by the horizontal gaze nystagmus test." (Emphasis added.) Appellant later requested a continuing objection "based on this witness's qualifications to testify about matters in biology." We believe the officer's testimony regarding his training that dealt in depth with the horizontal gaze nystagmus test was sufficient to establish him as an expert witness qualified to discuss the details and results of the test. We are not required to discuss whether a proper foundation was laid to establish the validity of the test because this point was not raised below; the appellate court will not address matters raised for the first time on appeal. *Chadwell* v. *State*, 37 Ark. App. 9, 822 S.W.2d 402 (1992).

■ Another factor in the reversal of *Middleton* was the allowance of testimony by the officer that based on the results of

the gaze nystagmus test, the defendant had a blood alcohol level of .15 of .16. In the case at bar, appellant objected to testimony that the test results indicated a particular blood alcohol content, and this objection was sustained. The officer was allowed only to testify that the test results indicated that the driver had ingested substances that would make him an unsatisfactory driver. No error occurred in the admission of this testimony.

Appellant's final argument is that the trial court erred in denying his motion for mistrial. During the course of his testimony regarding his observation of appellant at the police station, Officer Gilliam was asked how appellant appeared to him. He responded, "very intoxicated." When asked what did he mean by "very intoxicated," the officer replied, ".15, .14, .15." Appellant moved for a mistrial, which was denied. The court admonished the jury to disregard that portion of the officer's testimony.

Mistrial is an extreme remedy that should only be resorted to when there has been an error so prejudicial that justice could not be served by continuing the trial. *Crossley* v. *State*, 304 Ark. 378, 802 S.W.2d 459 (1991). The trial judge is vested with considerable discretion in acting on motions for mistrial because of his superior position to determine the possibility of prejudice, and the trial judge's decision will not be reversed absent an abuse of that discretion. *Muhammed* v. *State*, 27 Ark. App. 188, 769 S.W.2d 33 (1989).

Appellant's reliance on *Middleton*, 29 Ark. App. 83, is misplaced. There the officer testified that the defendant's performance on the horizontal gaze nystagmus test showed that he had a blood alcohol content of .15 or .16. The court found that the test was not a chemical test of a bodily substance and could not be used to establish a specific blood alcohol level.

Here, there was no reference to blood alcohol content, only a bare reference to numbers, and there was no attempt to bolster the officer's conclusion by linking it to the results of a field sobriety test. When the testimony is read in context, it is apparent that the officer's conclusions were based only on his own observations and impressions. The admonition to the jury was sufficient to cure whatever effect the statement may have had. *See Burnett* v. *State*, 299 Ark. 553, 776 S.W.2d 327 (1989). We cannot say the trial court abused its discretion in refusing to grant appellant's

motion for mistrial.

Affirmed.

CRACRAFT, C.J., COOPER and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I dissent because I disagree with the majority's conclusion that Officer Edward's actions were justified by the "fresh pursuit" doctrine. Officer Edwards was within the city limits when he observed the appellant speeding on a county road outside Office Edwards' territorial jurisdiction. As the majority notes, a local police officer acting without a warrant outside territorial jurisdiction lacks the official power to apprehend offenders in the absence of a state statute authorizing him to do so. *Perry* v. *State*, 303 Ark. 100, 794 S.W.2d 141 (1990). The *Perry* Court also noted that:

> The State of Arkansas has authorized local police officers to act outside their territorial jurisdiction in four instances: (1) the well known "fresh pursuit doctrine" which is codified as Ark. Code Ann. § 16-81-301 (1987); (2) when the peace officer has a warrant of arrest, Ark. Code Ann. § 16-81-105 (1987); (3) when a local law enforcement agency requests an outside officer to come within the local jurisdiction, and the outside officer is from an agency which has a written policy regulating its officers when they act outside its jurisdiction, Ark. Code Ann. § 16-81-106 (1989); and (4) a county sheriff may request that a peace officer from a contiguous county come into the requesting sheriff's county. The visiting officer may then come into that county and investigate and make arrests for violations of drug laws. Ark. Code Ann. § 5-64-705 (1987).

*Perry*, *supra*, at 102-103.

The majority attempts to distinguish *Perry*, *supra*, from the facts of the case at bar by noting that, in *Perry*, the police officer was not within his territorial jurisdiction when he first observed the defendant. However, this is a distinction without a difference because the crucial question with respect to the hot pursuit doctrine is not where the police officer is situated, but is instead where the offense is committed.

In *Perry* v. *State*, *supra*, the Arkansas Supreme Court held

that an officer seeking to make an arrest outside his territory must be treated as a private citizen. The *Perry* court further noted that, under Arkansas law, a private citizen may arrest upon reasonable cause to believe a felony has been committed, but may not arrest for a misdemeanor. Applying these rules to the facts of the case, the Supreme Court concluded that a Searcy policeman did not have the authority to arrest a driver for DWI when he saw the vehicle parked with the motor running in an unincorporated area outside the city limits.

*Perry* stands for the proposition that the commission of a misdemeanor in an officer's presence, without more, is not a sufficient basis to authorize an extraterritorial arrest. The *Perry* court noted that local police are authorized to act outside their territorial jurisdiction in cases of fresh pursuit, but did not answer the question presented in the case at bar, i.e., whether a police officer, who, while within his jurisdiction, observes a misdemeanor being committed outside his jurisdiction, has the authority to arrest under Ark. Code Ann. § 16-81-301 (1987).

There are no Arkansas cases which so define the extent of the "fresh pursuit" doctrine, but Ark. Code Ann. § 16-81-303 (1987) permits resort to the common law. The majority cites no authority for the proposition that the "fresh pursuit" doctrine applies when a police officer, from within his territorial jurisdiction, observes a misdemeanor being committed outside his territorial jurisdiction, but cases from other jurisdictions state the rule as follows: "The fresh pursuit exception allows officers, *who attempt to detain or arrest within their territorial jurisdiction*, to continue to pursue a fleeing suspect even though the suspect crosses jurisdictional lines." *State* v. *Phoenix*, 428 So.2d 262 (Fla.App. 1982) (emphasis supplied). Clearly, no attempt was made in the case at bar to effect an arrest within the officer's territorial jurisdiction. In Pennsylvania, it has been held that "the pursuit must begin both in the jurisdiction where the police are authorized to act and in that jurisdiction where the crime is committed." *Commonwealth* v. *Fiume*, 436 A.2d 1001 (Pa. Super. 1981). Certainly, this is the most reasonable result if peace officers are to be regarded as guardians of the territorial jurisdiction which employs them, and whose authority is derived from their territorial jurisdiction for its protection. The Arkansas Supreme Court in *Perry*, *supra*, endorsed this traditional idea of territorial jurisdiction for peace

officers, stating that it was a sound concept because a local community is best served when arrests are made by local officers. *Id.*, 303 Ark. at 103.

Finally, *Smith* v. *City of Little Rock*, 305 Ark. 168, 806 S.W.2d 371 (1991), does not support the proposition that an officer within his jurisdiction may, under the fresh pursuit doctrine, make an arrest for an offense he observed outside his jurisdiction. In *Smith, supra*, the campus officer's jurisdiction included streets "contiguous or adjacent to" the campus:

> A security officer appointed pursuant to the authority of 25-17-304, except to the extent otherwise limited by the executive head of the state institution or department appointing him, shall protect property, preserve and maintain proper order and decorum, prevent unlawful assemblies and disorderly conduct, exclude and eject persons detrimental to the well-being of the institution, prevent trespass, and regulate the operation and parking of motor vehicles upon and in all of the grounds, buildings, improvements, streets, alleys, and sidewalks under the control of the institution employing him.

Ark. Code Ann. § 25-17-305(a) (1987). Under Ark. Code Ann. § 25-17-301(1) (1987), " 'property' means both real and personal property owned by or under the control of the institution and shall include all highways, streets, alleys, and rights-of-way that are contiguous or adjacent to property owned or controlled by the institution." Clearly, the arrestee was on Fair Park, adjacent to the campus, when his erratic driving was noted by the campus officer, and there was no issue presented in *Smith, supra,* concerning the arresting officer's whereabouts. In my view, because the offense at issue in *Smith* was committed within the territorial jurisdiction of the arresting officer, *Smith* does not support the result reached by the majority in the case at bar.

I respectfully dissent.

CRACRAFT, C.J., and MAYFIELD, J., join in this dissent.